215 So.2d 261

**Wade HUBBARD**

v.

**STATE of Alabama.**

**6 Div. 457.**

Supreme Court of Alabama.

June 13, 1968.

Rehearing Denied July 25, 1968.

On Second Rehearing Oct. 17, 1968.

Further Rehearing Denied Nov. 7, 1968.

Thos. Seay, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

KOHN, Justice.

The defendant was indicted for murder in the first degree on February 16, 1967. He was found guilty and his punishment was fixed at death. On February 24, 1967, judgment was rendered in accordance with the verdict of the jury. A motion for a

new trial was overruled on August 28, 1967. The defendant thereafter perfected this appeal.

The appeal here is under the automatic appeal law applicable to cases where the death sentence is imposed. Act No. 249, approved June 24, 1943, General Acts 1943, p. 217, carried in the 1955 Cumulative Pocket Part to Vol. Four, 1940 Official Code, and in the 1958 Recompiled Code as Title 15, § 382(1) et seq.

The facts in this case arise from the strangulation death of a woman on March 26, 1966. The evidence shows that she was killed between 4:00 o'clock and 6:30 o'clock of the evening of the 26th of March. When the body was discovered it was partially nude and the head had been badly beaten. The woman's body was lying in a pool of blood. The defendant was arrested at his home at around 10:30 on this same night. The detective who arrested him said that when he saw the defendant at his home that night, the defend- had scratches on his body, blood on his belt and on his blue jeans, and that he had no shirt on. After he was arrested, he was taken to the City Hall and placed in the "robbery room," this being around 11:00 o'clock at night. Several law enforcement officers were in and out of the presence of defendant during such time. One of these officers testified that he questioned the defendant during this time. He also testified that before he questioned him, he warned the defendant that he had the right to remain silent, and that if he made a statement it might be used against him. He also testified that he told the defendant that there was a telephone he could use if he wished to call an attorney, and if the defendant wanted, he would make the call for him. After this, the defendant made some incriminating statements. However, they were not offered in evidence and, therefore, there is no question raised on this appeal as to their admissibility.

At approximately 12:30 o'clock, some one and one-half hours after the defendant had been in custody, he was required to stand on a piece of newspaper and remove his clothing. There were several law enforcement officers present at this time, as well as the State Toxicologist. The State, during the course of the trial, offered in evidence these articles of clothing of the defendant, and they were admitted in evidence over the timely objection of the defendant. Also, the State offered and the court admitted over the timely objection of the defendant, in evidence several hairs which were recovered from the defendant during the disrobing process. Several of these hairs were identified at the trial as being the pubic hairs of a person of the negroid race, and two others as being the pubic hairs of a person of the non-negroid race. The latter two hairs were also shown to be similar to the pubic hairs of the victim.

The main contention of the appellant on this appeal is based upon the admitting in evidence of these articles of clothing and these hairs recovered from him during the disrobing process.

It is not necessary to pursue certain aspects of this case that may run afoul of the Constitution of the United States as now construed by the federal courts, including the United States Supreme Court. However, if this appeal is not reversed under the law of Alabama, a necessity for reversing it may be required by the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, citing Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. *Wade* adopted the rule of *Cochran* relative to whether or not an offer of counsel was rejected. " * * * there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

■ In a matter such as this, where the death penalty is inflicted, we are charged by the law of this State with a duty to examine with care the proceedings, and to

see that the defendant is not denied his constitutional rights. The statute governing this appeal, usually termed the "automatic appeal statute" makes this a solemn duty on the court to examine the entire record and evidence offered against the defendant. Act No. 249, approved June 24, 1943, General Acts 1943, p. 217, carried in the 1955 Cumulative Pocket Part to Vol. Four, 1940 Official Code, and in the 1958 Recompiled Code as Title 15, § 382(1) et seq.

It is apparent from the record that the police officers involved in this arrest and prosecution of the defendant performed their duties well and fairly in the main. Likewise, the able district attorney and his excellent staff. The trial court was an example of carefulness and prudence in conducting the trial, yet the errors committed were fatal.

This court has long held, as early as 1889 and as late as 1960, that the protection under the Constitution of Alabama is two-fold in regard to the issues here— one protects the defendant from being compelled to *testify against himself,* the other protects the defendant from being compelled from doing any *affirmative act* that may result in the admission of evidence tending to incriminate him. Nothing in the record discloses that the defendant was warned that the *affirmative act* of disrobing himself could result in evidence that could be used against him. Here, it was used against him. The deputy district attorney prosecuting the case frankly admitted, as follows:

> "While this defendant was under arrest and in custody of the Officers of the Police Department he was required to, or either voluntarily, or both, took off all of his clothes, and those clothes were shaken and certain material came out of them and were examined microscopically by type and by screen tests and by other tests to determine whether or not there was blood on his clothes that were taken from him, and where the blood was. There was a hair—"

Also, the State Toxicologist testified as follows in response to this question by the prosecuting attorney:

> "Q. He was clothed. *Did you have him remove* his clothes or garments from his body there on that occasion? [Emphasis supplied.]
>
> "A. Yes, sir, I did."

■ We are unable to conclude from the record that the action of the defendant in disrobing himself was voluntary. Although there may have been sufficient legal evidence upon which the jury based its verdict, we cannot presume that illegal evidence did not permeate the verdict. Supreme Court Rule 45 has no field of operation here. The test is not whether the illegal evidence influenced the jury, but whether it might have unlawfully influenced the jury in the verdict returned. Eaton v. State, 278 Ala. 224, 177 So.2d 444; Oliver v. State, 232 Ala. 5, 166 So. 615.

Here, fatal errors pierced the cloak of protection violating basic and fundamental rights provided this defendant by the Constitution of Alabama. Section 6, Article 1, Constitution of Alabama, 1901. This section provides, in part, that an accused "shall not be compelled to give evidence against himself." This provision has been construed as protecting a person from being required, against his will, from doing any positive act tending to operate as evidence against himself in a criminal case, and it has been held, and is the law of this State, that it does not violate this rule for another person to do an act against the will of the defendant which relates to his person and thereby cause defendant to reveal evidence later used against him. Aaron v. State, 271 Ala. 70, 82, 122 So.2d 360, quoted with approval Hunt v. State, 248 Ala. 217, 27 So.2d 186; Cooper v. State, 86 Ala. 610, 6 So. 110; Myhand v. State, 259 Ala. 415, 66 So.2d 544.

It may appear that these holdings are incompatible and are equivalent to legal hair-splitting, for it may be argued, how

is a defendant harmed when his constitutional rights are violated by compelling him to take an *affirmative act* which results in evidence used against him, when it would have been legal to take the same evidence from him through another's actions? Another way of stating an argument could be that in a particular case, who is harmed when a guilty defendant is convicted by illegal evidence. It has been so argued throughout history that, why object to convicting the guilty by illegal means when the same objective could be reached by legal means. The principle that "the ends justify the means" has no place in constitutional law. Countless skeletons repose in the historical dungeons of the world giving mute testimony to the error of such argument. Today, it could be the guilty convicted by illegal means! Who knows whether tomorrow it would not be the innocent? The Alabama Constitution protects methods, as well as results, and above all, the Constitution must be upheld. We require no mandate from the Supreme Court of the United States.

An early decision by this court exactly in point, construing a similar section in an earlier Constitution to Article 1, § 6 of the Constitution of 1901, is the case of Cooper v. State, 86 Ala. 610, 6 So. 110. Chief Justice Stone, in discussing this section of the Constitution, among other things, said:

"* * * It doubtless had its birth in the abhorrence with which confessions, coerced by inquisitorial torture, were regarded alike in England and America. * * *"

In that case, an attempt was made to get the defendant to make footprints in order to get a comparison between them and footprints left by a burglar. The defendant refused to do so, and as they were trying to get the testimony before the jury that he refused to do so, the court enumerated the principle by saying, "it would have been unlawful to force the witness to give (or make) evidence against himself."

In the case of Hunt v. State, 248 Ala. 217, 27 So.2d 186, it was held that in this State a person cannot be required against his will to do any positive act tending to operate as evidence against himself in a criminal case. In this decision, the court dwelled once more on what was not a violation of this rule, by stating another person could do an act against the will of the defendant which relates to his person, and thereby cause to be revealed matter material as evidence against him, as by an illegal search where he was required to produce nothing, to testify to nothing. But here, once again, this court reiterated the principle that an affirmative act or declaration made by a person not acting voluntarily is not admissible against him.

Leaving Hunt v. State, supra, we find that this same question was passed upon by the court in Myhand v. State, 259 Ala. 415, 66 So.2d 544. The question there was whether or not defendant-appellant was compelled to remove his clothes. The court decided that under the evidence the trial court did not err in permitting the State to introduce the clothing in evidence for the reason that, under the evidence adduced, the trial court was amply justified in finding that appellant was not compelled to take off his clothes, but that he did so readily and voluntarily.

The next question decided by *Myhand*, supra, was that "smears" taken from a certain part of the body of the appellant was not illegally done in that the appellant was not forced or coerced to permit the smears to be made, the court approved Hunt, v. State, supra, by stating, "it seems to be well settled in this state that facts ascertained and opinions formed by an examination of an accused without his consent or when his consent to the examination has been improperly obtained are not inadmissible on that account." Therefore, it is readily clear that *Myhand* did not overrule directly, or by implication, that part of Hunt v. State, supra, which said that one could not be compelled to take affirmative action and create evidence against himself.

Leaving *Myhand*, we come to Aaron v. State, decided by this court on July 14, 1960, and reported in 271 Ala. 70, 122 So. 2d 360. Here the court met the question involved in this case squarely, and also reiterated the exception:

"Section 6 of Article 1 of the Constitution of this state provides, in part, that an accused 'shall not be compelled to give evidence against himself.' This provision has been construed as protecting a person from being required against his will from doing any positive act tending to operate as evidence against himself in a criminal case. But it does not violate this rule for another person to do an act against the will of the defendant which relates to his person, and thereby cause to be revealed matter material as evidence against him. * * *"

This same decision, Aaron v. State, supra, citing earlier decisions, stated: "The fact that the shirt, trousers and socks were taken from the defendant by officers did not render them inadmissible.

The case of Aaron v. State, 273 Ala. 337, 139 So.2d 309, which again came before this court, convinces us that the principle reaffirmed in the first Aaron v. State, supra, case was not overruled. Among other things on the second appeal, this court said:

" * * * the undisputed evidence is that she identified him before he was asked to repeat the phrase. Also, there is no evidence that appellant was compelled to do anything."

Having referred to some words which the defendant was supposed to have used while attacking her.

The question raised on the second *Aaron* appeal was that the defendant's rights under § 6 of the Alabama Constitution of 1901 were violated in that he was "compelled to give evidence against himself" because he was asked to repeat certain words. The decision in Seals v. State, 271 Ala. 142, 122 So.2d 513, is not in conflict with the *Aaron* decision under the particular facts of the case. Seals was not compelled to repeat any words which the prosecutrix said were used by her assailants during the attack upon her. [1]

In conclusion, we can go back to Hunt v. State, supra, where the court in summary says, 248 Ala. at page 225, 27 So.2d at page 194:

"From the foregoing authorities it is apparent that an affirmative act or declaration made by a person not acting voluntarily is not admissible against him. But that facts ascertained and opinions formed by an examination without his consent or when his consent to the examination was improperly obtained are not inadmissible on that account. Spicer v. State, supra; Banks v. State, supra."

1. In Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the court held, under the facts of the case, that the constitutional rights of the defendant had not been violated by taking compulsory blood test from him (16 L.Ed.2d 1332). For a review of the authorities on the question of "physical examination or exhibition of, or tests upon, suspect or accused, as violating rights", see: Hayes v. United States, 10 Cir., 367 F.2d 216 (1966), where it was held that removing substance from defendant's knees and from around his finger nails and from his shoes was not unreasonable under the facts of the case. Also, see: 28 A.L.R.2d 1115.

For purposes of identification of accused by voice demonstration, see 16 A.L.R.2d 1322, and for a later review of rulings of voice demonstrations, see the note to Schmerber v. California, 16 L.Ed. 2d 908, at page 1344, paragraph 7, where a voice demonstration by a rape suspect, under the particular facts of the case, was held to constitute a denial of due process in the case of Palmer v. Peyton (1966 C.A.4 Va.) 359 F.2d 199.

In Wade v. United States, a 1966 case also, 5 Cir., 358 F.2d 557, a suspect already arrested and already having counsel was held to have been denied the right to counsel under the Sixth Amendment, where he was subjected to a lineup in the absence of his counsel and made to repeat words uttered at the time of the robbery as a voice demonstration.

A comprehensive review of this question will be found in the opinion of the Court when *Wade's* case was decided by

Life and liberty are too precious to be lost by a violation of a fundamental constitutional right. This was a horrible and most regrettable crime, but we must be careful not to do an unjust thing—fail to uphold the Constitution of Alabama. The Constitution would be a mockery if not upheld.

Basic rights of the defendant, as provided by the Constitution of Alabama, as construed by this court in many decisions, having been violated, as above noted, this cause is reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.

## ON SECOND REHEARING

COLEMAN, Justice.

On motion of the writer, this cause was placed on rehearing.

On further consideration, we are of opinion that admitting into evidence defendant's clothing and the hairs, which fell from his body when he took off his clothes, was not error.

On original deliverance, we held that admitting these articles into evidence violated the rights guaranteed to defendant by Section 6 of the Constitution of 1901, which recites:

"That in all criminal prosecutions, the accused . . . . shall not be compelled to give evidence against himself . . . . ."

The reversal rested on the proposition that when defendant was compelled to take off his clothes and make them, and the hairs which fell from his body, available to the state, he was being compelled to give evidence against himself in violation of the constitutional privilege.

The clothes and hairs admitted into evidence in the instant case, as it appears to us, are not the sort of evidence which cannot be admitted without violating the privilege against self-incrimination.

The rule as to what violates the privilege was stated by the late Mr. Justice Holmes, in reviewing a conviction for murder with life sentence, as follows:

"Another objection is based upon an extravagant extension of the 5th Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. . . . . " Holt v. United States, 218 U.S. 245, 252, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1030.

In 1966, the last two sentences of the foregoing quotation were quoted with approval in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, 915.

In 1967, the Supreme Court of the United States considered a case involving the identification of defendant in court, where he had been identified by the same witnesses at a pre-trial line-up. The court vacated the conviction pending a hearing in the District Court to determine whether the in-

the Supreme Court of the United States (1967), United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.
From Brown v. Standard Casket Mfg. Co., 234 Ala. 512, 519, 175 So. 358, 364,

is a definition of the word "act"—"*Act* denotes the affirmative. * * * *Act* carries the idea of performance."

court identification had an independent source, or whether the introduction of the evidence was harmless error. The court cited *Holt* and *Schmerber*, and, with respect to the privilege against self-incrimination, the court said, among other things:

"Neither the lineup itself nor anything shown by this record that Wade was required to do in the lineup violated his privilege against self-incrimination. We have only recently reaffirmed that the privilege 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . .' . . . .

" . . . . . . . . .

"We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. We held in Schmerber, supra, 384 U.S. at 761, 86 S.Ct. at 1830, [16 L. Ed.2d at 914] that the distinction to be drawn under the Fifth Amendment privilege against self-incrimination is one between an accused's 'communications' in whatever form, vocal or physical, and 'compulsion which makes a suspect or accused the source of "real or physical evidence," ' Schmerber, supra, 384 U.S. at 764, 86 S.Ct. at 1832 [16 L.Ed.2d at 916]. We recognized that 'both federal and state courts have usually held that

. . . [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' Id., at 764, 86 S.Ct. at 1832, [16 L.Ed.2d at 916]. None of these activities becomes testimonial within the scope of the privilege because required of the accused in a pretrial lineup." United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1154, 1155.

Where defendant had been convicted for stealing corn from a crib, the Supreme Court of Indiana reversed for error in instructing the jury. The court decided, however, against defendant's contention that his privilege against self-incrimination had been violated by admitting into evidence his shoes which had been forcibly taken from him by the sheriff after defendant had been arrested and was in jail. The court said:

"Tracks made by persons near the Ream corncrib, from which, in the opinion of witnesses, corn had been taken, had a distinctive appearance and corresponded with the peculiar features of the shoe tracks made by appellant in the presence of those engaged in locating the theif. . . . .

" . . . . . . . . . .

"Now, as to the claim that appellant was 'compelled to testify against himself.' If appellant had been compelled to do or say anything out of court that might tend to connect him with the crime, there would be room for the insistence that he was compelled to testify against himself, and a basis for the asserted violation of our state Constitution. Cooper v. State, 86 Ala. 610, 6 So. 110, 4 L.R.A. 766, 11 Am.St.Rep. 84. In the instant case it was the shoes, and not the accused, that testified. . . . ." Biggs v. State, 201 Ind. 200, 167 N.E. 129, 131, 64 A.L.R. 1085, 1087, 1088.

Where defendant had been convicted· of an attempt to administer poison to another, the court considered two questions relating to defendant's shoe and certain tracks in a garden. The alleged offense consisted in sprinkling Paris green, a poison, upon leaves of turnips growing in the prosecutor's garden. Among the circumstances tending to connect defendant with the offense was a line of tracks leading from the turnip patch to defendant's house. The sheriff testified that he asked defendant to go to where the tracks were; that she complied; that he asked her to put her foot in the tracks; that she pretended to do so, but would not put her foot in the track in the right way as requested by the sheriff; that he made her take off her shoe; and that it fitted the track, presumably being adjusted by the sheriff. The court stated the questions for decision as follows:

"The exceptions raise the following questions, which, alone, we deem it necessary to consider: (1) Was the testimony of the sheriff admissible, to the effect that he compared the shoe of the defendant with the tracks in the potato patch, and that it fitted, when it appeared that he had forced the defendant to remove her shoe, and made the adjustment himself? (2) Was the testimony of the sheriff admissible, to the effect that he compelled the defendant to put her foot in the track, and that she would not do it in the right way?" State v. Griffin, 129 S.C. 200, 124 S.E. 81, 35 A.L.R. 1227, 1228.

As to the first question, the court held that the testimony of the sheriff, to effect that he compared the shoe with the tracks and that the shoe fitted the tracks, was properly admitted and did not violate the privilege against self-incrimination. With respect to the privilege, the court said among other things:

". . . . But, taken in connection with the ancient principle· of evidence that one shall not be compelled, in any proceeding, to make disclosures or to give testimony which may tend to incriminate him, or subject him to fines, penalties, or forfeitures, to be used against him in a criminal proceeding subsequently instituted, ·it has come to be construed, as declared by the Supreme Court of the United States in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, thus: 'The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which· might tend to show that he himself had committed a crime.'

"The privilege, we think, should be extended even further than this, and held to cover testimonial compulsion under any circumstances.· The line of cleavage is whether the proposed evidence is the testimony of the defendant, or evidence in itself, unaided by any statement of the defendant.

". . . . . . . . . . . .

"In the case at bar the defendant was not being treated as a witness; the shoe and the comparison of the shoe with the track were not the testimony of the defendant, but of the sheriff, distinct from anything she may have said or done; the shoe was obtained from her control without the use of any process against her as a witness; she was not necessary to establish its authenticity, identity, or origin, which facts were established by the testimony of the sheriff. . . . ." (124 S.E. at 82, 35 A.L.R. at 1229)

Many cases are considered in the opinion. As to the second question the court said:

"As to the second question:· Touching the admissibility of the sheriff's testimony as to compelling the defendant to put her foot in the track, and her conduct in doing so. From the principles discussed in connection with the first question, it appears, indisputably, that this evidence falls on the wrong side of the line of cleavage. If the conformity had been perfect, that fact would have· ap-

peared from the enforced conduct of the defendant, clearly testimonial compulsion. If otherwise, as appeared, the inference of guilt from the effort to obliterate the track would have been a legitimate basis of comment; it would have been supplied by the defendant, a clear cut case of testimonial compulsion, as Mr. Wigmore aptly terms it." (124 S.E. at 86, 35 A.L.R. at 1234, 1235)

The court held that admission of the evidence referred to in the second question was reversible error.

In 1964, in a habeas corpus proceeding in the federal courts, defendant complained of conviction in a state court for rape. State officers had arrested defendant, taken his clothes, and combed his hair. Defendant contended that he was illegally arrested and there was an unlawful search of his house and person. The court concluded that defendant's arrest was lawful. The District Court said:

> "It is settled law that a search of the person or premises incident to a lawful arrest is permissible. (Citations Omitted) Since the arrest without a warrant was lawful under the circumstances, it follows that the evidence obtained from the clothes removed from petitioner's body and the thread and hair taken from petitioner's head were not illegally obtained. (Citations Omitted)" Maxwell v. Stephens, 229 F.Supp. 205, 209.

The District Court denied relief and the Eighth Circuit affirmed. With respect to the claim of compulsory self-incrimination, the Circuit Court said:

> "Neither are we impressed with any suggestion that the testimonial references to the coat were in any way a further violation of Maxwell's right not to be compelled physically to be a witness against himself, within the meaning of the Fifth and Fourteenth Amendments. The description of the coat and what was found on it was objective evidence from the mouths of witnesses who saw or who investigated. The coat is in no different category than the contours of Maxwell's face, the color of his hair, the description and the nature and condition of the clothes he wore, and his very size and color. (Citations Omitted)" Maxwell v. Stephens, 348 F.2d 325, 338.

Certiorari was denied: 382 U.S. 944, 86 S. Ct. 387, 15 L.Ed.2d 353; 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed. 490.

### Alabama Cases

In Cooper v. State, 86 Ala. 610, 6 So. 110, the prosecuting witness testified that he had told defendant that, if he would make tracks on a carpet and defendant's tracks did not correspond with the tracks made by a burglar on the carpet, the witness would release defendant; but that defendant declined to make tracks. This court held that it was unlawful to force defendant to make evidence against himself and that, in receiving evidence of the offer made to defendant to make tracks and his reply and conduct consequent thereon, the court erred to reversal. The evidence involved was not clothing or shoes taken from defendant, but his own testimonial or communicative act in refusing to make the tracks.

In Potter v. State, 92 Ala. 37, 9 So. 402, a burglary case, evidence that defendant's foot fit the tracks was held admissible where defendant was carried at his own request and voluntarily placed his feet in the tracks.

In Davis v. State, 131 Ala. 10, 31 So. 569, the court held it reversible error to admit evidence that defendant declined to consent to taking away his shoes for the purpose of comparison with certain tracks, citing Cooper v. State, supra.

In Moss v. State, 146 Ala. 686, 40 So. 340, the court held it was not error to admit testimony of a witness, in regard to the description of the shoes worn by defendant when he was arrested, where defendant took off his shoes voluntarily and handed them to the witness.

In Crenshaw v. State, 225 Ala. 346, 348, 142 So. 669, 671, the court held that evi-

dence that defendant had been required to put on his cap was admitted without error. The court said:

"That he was required by the officers to put his cap on was not requiring defendant to make evidence against himself in violation of constitutional guaranties. The right of public authorities to take such reasonable measures for purposes of identification, we do not question. It was their right and duty to ascertain whether the party was the man they were after, and for such purpose put him in best position for observation by the witness who had seen him at the time of the homicide."

In Burks v. State, 240 Ala. 587, 200 So. 418, a witness testified that he put his own shoe in a track and it fit perfectly; that he had defendant arrested and had him pull off his right shoe; that witness pulled off his right shoe which he had measured the track with and asked defendant to put on the right shoe of the witness. Witness was then asked did defendant have difficulty in getting the shoe on. Objection was made that the question called for a conclusion and immaterial evidence. Objection was overruled and witness answered: "No, sir." As to self-incrimination, the court said:

"But the fact that he put on the shoe is not an admission of an inculpatory nature. True, he could not be required to say or do anything having a tendency to incriminate him. But a predicate is not required under such circumstances as to a purely collateral matter.

"The statement of the witness that the defendant's foot fit the shoe when he put it on was excluded by the court. The fact that his foot went in the shoe was of a physical fact open to observation, and was observed by him then and there looking at it, as we understand the evidence. It was in no sense the expression of the conclusion of the witness." (240 Ala. at page 589, 200 So. at page 419)

The majority of the court, however, reversed, saying:

"Not controverting the foregoing features of this opinion, a majority of the Court, consisting of GARDNER, C. J., BOULDIN, KNIGHT, and LIVINGSTON, JJ., are of the opinion that the evidence of the witness Bryan as herein outlined relating to his act of putting his own shoe in the track, that it fit the track, and that defendant's foot went into that shoe of the witness, was all irrelevant and probably prejudicial, and that the judgment should be reversed for not sustaining the objection on that ground. . . . ." (240 Ala. at page 589, 200 So. at page 420)

In Myhand v. State, 259 Ala. 415, 66 So. 2d 544, defendant was arrested and in jail. He removed part of his clothes and put on some that belonged to an officer. Defendant's clothes were delivered to the toxicologist and introduced in evidence at the trial. This court held that this was not error and affirmed, saying:

"Appellant's counsel recognizes the rule of our cases to the effect that the wearing apparel of a defendant, identified as that worn by him at the time of the crime, when tending to shed light on the issues is properly admitted in evidence. Taylor v. State, supra [249 Ala. 130, 30 So.2d 256]; Robinson v. State, supra [243 Ala. 684, 11 So.2d 732]; Daniels v. State, 243 Ala. 675, 11 So.2d 756.

"Counsel for appellant insist, however, that appellant's clothing was improperly admitted in evidence for the reason that appellant was compelled to remove his clothes and give them to Officer Prier and hence to permit the introduction of the (sic) in evidence was tantamount to compelling appellant to produce testimony against himself, in violation of the provisions of Art. 1, § 6 of the Alabama Constitution. Without passing on the question of whether such articles of clothing would have been admissible if the evidence showed that appellant was compelled to deliver them to Officer Prier, we are of the opinion that the trial court did not err in permitting the State

to introduce the clothing in evidence for the reason that under the evidence adduced the trial court was amply justified in finding that appellant was not compelled to take off his clothes and give them to the officer, but that he did so readily and voluntarily upon being told by the officer that the latter wanted to keep the clothes for evidence. Moss v. State, 146 Ala. 686, 40 So. 340." (259 Ala. at page 519, 66 So.2d at page 547)

*Myhand* was decided "Without passing on the question of whether such articles of clothing would have been admissible if the evidence showed that appellant was compelled to deliver them . . . ." to the officer.

In Aaron v. State, 271 Ala. 70, 122 So.2d 360 [21], this court held that certain clothing in possession of defendant at the time of arrest was admitted into evidence without error. The court said:

" . . . . The fact that the shirt, trousers and socks were taken from the defendant by officers did not render them inadmissible. (Citations Omitted)

" . . . . . . . . . . . .

" . . . . The fact that the small pieces of wallboard were recovered from defendant's trousers without his express consent and without the defendant being advised that the result of an examination of his personal effects might be used against him does not affect the admissibility in evidence of the small pieces of material. (Citation Omitted)

" . . . . . . . . . . . .

"Section 6 of Article 1 of the Constitution of this state provides, in part, that an accused 'shall not be compelled to give evidence against himself.' This provision has been construed as protecting a person from being required against his will from doing any positive act tending to operate as evidence against himself in a criminal case. But it does not violate this rule for another person to do an act against the will of the defendant which relates to his person, and thereby cause to be revealed matter material as evidence against him. (Citation Omitted)

" . . . . . . . . . . . .

"It was not error to permit the State Toxicologist to testify that he found on the shirt which was introduced in evidence and identified as having been worn by the defendant at the time of his arrest, calcium sulphate or gypsum similar to some of the material of which the closet wallboard was made." (271 Ala. at pages 81, 82, and 83, 122 So.2d at pages 370, 371)

In Seals v. State, 271 Ala. 142, 122 So. 2d 513, testimony, concerning a shirt allegedly worn by defendant when first questioned, was considered. The court said:

"The defendant was first interrogated concerning the crime on Monday afternoon, June 16, at the home of some colored persons by the name of Coulston, which was located almost next door to the service station and telephone booth. At the time the defendant was wearing a plaid shirt. Some of the plaids were a light blue with a greenish tinge. Other plaids were gray, brown and black.

"On the following day when the defendant was again questioned by the police officers he was not wearing that shirt and upon inquiry stated that the shirt was at his home. He accompanied the officers to his home and went through the motions of trying to locate the shirt but finally admitted that he had given the shirt to a friend of his by the name of John Middleton or Millender.

"The State produced Middleton, alias Millender, as a witness, who testified among other things to the effect that he had been questioned by the police authorities of the City of Prichard and had been released; that after his release he told the defendant, Seals, that the police were looking for a boy wearing a shirt similar to the one which Seals was wearing. When such advice was given him, Seals turned over the plaid shirt to Mid-

dleton, alias Millender, who then loaned Seals a shirt.

"The testimony of Middleton, alias Millender, was admitted without error. Any indication of a consciousness of guilt by a person suspected of or charged with a crime or who may, after such indications, be suspected or charged is admissible evidence against him. McAdory v. State, 62 Ala. 154." (271 Ala. at page 147, 122 So.2d at page 516).

We do not understand that the holding with respect to defendant's clothing, and matter found in them, in Aaron v. State, 273 Ala. 337, 139 So.2d 309, is in anywise different from the holding on the first appeal in 271 Ala. 70, 122 So.2d 360, supra.

Under the recent decisions of the United States Supreme Court in *Schmerber* and *Wade*, the clothing and hairs were admitted without violating the privilege in the instant case. The act of defendant in taking off the clothes and surrendering them to the sheriff was not a testimonial or communicative act. The clothing was the witness, not the defendant.

As we understand the Alabama cases discussed above, our rule is not different from the federal rule or the rule followed in other jurisdictions.

The opinion on original deliverance suggests the proposition that if the clothes of the instant defendant had been manually and forcibly removed from his body by police officers, then the clothing would have been admissible in evidence, but that, because defendant was compelled to remove his clothes himself with his own hands, then he was compelled to give evidence against himself and the evidence thus given, i. e., the clothing and hairs, is not admissible because it was compelled in violation of the constitutional privilege. We do not think that this proposition is sound. The privilege is against being compelled to be a witness or give evidence against self. If the clothes of defendant are taken from him forcibly and manually by police officers, he is compelled to surrender the clothes and thus give evidence against himself just as

much as if, as in the instant case, he is compelled by the show of overwhelming force to take off the clothes and surrender them himself. Where the police officers manually remove the clothes, the force is actually exercised. Where defendant removes the clothes himself, the force is merely threatened to be exercised. In either case, defendant is compelled and the evidence is equally admissible or inadmissible. The defendant is not compelled in either case to be a witness against himself. He is not the witness, the clothing is.

In the instant case, we are of opinion that defendant's clothing and the hairs from his body were real or physical evidence and were not evidence of a testimonial or communicative nature. Accordingly, we hold that admission of the clothing and hairs into evidence did not violate defendant's privilege under the constitution which guarantees that, in a criminal prosecution he shall not be compelled to give evidence against himself.

In his brief, defendant asserts that the court erred in giving to the jury a certain oral charge. The record shows that after the court finished giving the oral charge, the following occurred:

"(Whereupon, the Court read the written charges requested by the Defendant marked, 'Given'.)

"THE COURT: What says the State with respect to the Court's oral charge?

"MR. McDONALD: State is satisfied, Your Honor.

"THE COURT: What says the defendant?

"MR. SEAY: The defendant is satisfied, Your Honor.

"THE COURT: I can't hear you.

"MR. SEAY: The defendant is satisfied, Your Honor.

"THE COURT: Now, gentlemen—

"MR. HAWKINS: Excuse me just a moment, Your Honor.

"I don't know whether there is any significance to it, but I believe when you

were discussing expert testimony you did not mention Mr. Johnson who is an expert in criminal biology. You left his name out.

"THE COURT: I am sorry.

"Gentlemen, it has been called to my attention, even though, I think I didn't mention biochemistry, that I did not call to your attention the name of the witness, Robert Johnson, who took the stand here. His qualifications are such that the Court designates him as an expert, and as I indicated to you with respect to the testimony of the other people who testified as experts, that testimony, of course, is not binding upon you, but you will take it into consideration with all of the testimony that you have heard from the witness stand in arriving at your verdict.

"Now, gentlemen, you have had some considerable number of exhibits that have been offered in this case. You will have those with you, some offered by the State and some offered by the defendant, and you will have these forms that I have prepared here for you, for your verdict. They are not in any wise suggestive of a verdict, but they are the forms that you may use should you arrive at a verdict. You have in evidence the big blackboard over here which will go out with you, and the small board over here (indicating), and then, these smaller articles that have been admitted into evidence. You will have with you the indictment. You will have with you the charges that the defendant has requested, which the Court has read to you.

"All right, gentlemen, you may take the case.

"(Whereupon, the jury was retired to the jury room at 9:35 P. M.)"

Defendant says that the further instruction given to the jury was an instruction requested by the state, but not in writing, and giving it violated Title 7, § 273, Code 1940, which provides that:

"Charges moved for by either party must be in writing, and must be given or refused in the terms in which they are written . . . ."

Defendant appears to contend that the court erred in giving the additional charge because it was not requested in writing. Defendant cites Mason v. State, 19 Ala.App. 473, 98 So. 137, to support his contention. In *Mason*, the Court of Appeals held that the trial court did not err in refusing defendant's oral request to charge that the jury might convict defendant of a misdemeanor. The court said: "Unless it affirmatively appears that the charge asked was in writing, the appellate court will not review the action of the lower court in refusing it." (19 Ala.App. at 474, 98 So. at 138) The court did not hold that it was error to give a charge that was not requested in writing.

Defendant cites also Pate v. State, 29 Ala.App. 78, 191 So. 640, where the court again held that the trial court will not be reversed for refusal to give a requested charge unless it appear that it was asked in writing as the statute requires. Also, defendant cites Pinkerton v. State, 31 Ala. App. 599, 20 So.2d 604, where the court refused to consider defendant's requested charges because they were not endorsed as required by statute.

We do not think a court errs in giving a requested charge simply because the request is oral and not in writing.

█ █ Defendant says giving the additional oral charge was error because it called attention to the testimony of the state's witness Johnson, at the very time it would be most impressive, after both sides had accepted the court's oral charge. We are not to be understood as intimating that giving the additional charge was error, even if defendant had properly reserved an exception; but, defendant did not except to the additional oral charge. Not having seasonably reserved an appropriate exception to the part of the oral charge now asserted for error, the appellant does not present for review on appeal the action of the court in so instructing the jury. McPherson v. State, 198 Ala. 5, 10, 73 So. 387.

Under the automatic appeal act, we are not required to review the oral charge of the court in the absence of exception thereto. Byrd v. State, 257 Ala. 100, 105, 57 So.2d 388. Error in giving the additional oral charge has not been shown.

The case was carefully tried. On examination of the entire record, we are of opinion that error to reverse does not appear.

Accordingly, the rehearing is granted and the judgment is affirmed.

Rehearing granted.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL, and HARWOOD, JJ., concur.

KOHN, J., dissents.

KOHN, Justice (dissenting).

Nothing in this dissent is intended to suggest the innocence or guilt of the defendant. Such is not the issue here. Since the original opinion decided by this court on June 13, 1968, granted the defendant a new trial, it was not then necessary, in such original opinion, to discuss at length certain aspects of the case as disclosed by the record of the proceedings at the trial of the defendant relative to the principle set out in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and referred to in the original opinion of this court. Now this court, by its decision rendered today, some four months after its rendition of its original opinion, changes its mind after approving its original opinion, on July 25, 1968, when the matter, for the second time, came before the court on the application made by the State for rehearing. The hearing today being the third time this matter has been before the court. The opinion today now for the first time affirms the conviction of the defendant.

The writer of this dissent is of the opinion that justice and the law require that this case be reversed and remanded for another trial. The reason being on the addi-

tional ground that the record does *not* disclose a sufficient compliance with *Wade*, supra, and other decisions relative to the necessity for the presence of defendant's lawyer at the specific time and place, when and where *late at night, while in custody*, the defendant was ordered to disrobe. This occurred in the absence of defendant's lawyer, but in the presence of law enforcement officers. This positive, affirmative and non-voluntary act of the defendant at such time and place resulted in the disclosure, by such ordered and non-voluntary disrobing, of certain evidence that over the objection of defendant through his lawyer at the trial below was admitted into evidence before the jury. While it is true that *Wade* was decided several months after the original trial of defendant Hubbard below, *Wade* approves Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, decided April 30, 1962, which was before the trial of the defendant, Hubbard. The principle set out in *Carnley*, supra (and other decisions), is sound and should be applied here.

The majority opinion, overruling the original opinion, may be logical and sound reasoning, but in the opinion of the writer, it overrules prior decisions of this court construing a clearly expressed, plainly worded section of the Constitution of Alabama 1901, setting out a basic right which, in effect, creates a mandate to this court.

This court, like the most humble citizen, is subject to the Constitution.

Should the Constitution require amending, it should be done by the method prescribed by the Constitution itself, and not by judicial fiat. In the tumultuous times of today, the thought may not be of popular acceptance, but it is a legal truism long existing in American jurisprudence, that the convicted—even the guilty—have certain constitutional rights. The defendant in this case, in being granted a new trial, was simply given the benefit of a basic and fundamental right given him, and all other citizens, by the Constitution of Alabama. For the particular wording of the Constitution giving him such a right is plain, clear and

simple. I can come to no other conclusion than that the majority opinion rendered today in allowing an affirmance (after twice doing otherwise) on this appeal departs from what the Constitution of Alabama says in plain, simple and unmistakable language, language that has heretofore been given plain and positive meaning by this court.

The winds of change are constantly blowing, sometimes withering the leaves upon the tree of liberty. But, if the Constitution —the tap root—lives, the fruit will come again.

It is the Alabama Constitution we are construing. I approach it with respect for it is a covenant made by the people to govern themselves. No division of government should amend it, for such right is vested in the people alone, the ultimate power of government.

To depart from what the Constitution of Alabama plainly provides and what this court has held it to mean in its decisions, pointed out in the original opinion, would be, in effect, to deny the people the right to govern themselves by a written Constitution.

I respectfully dissent.