309 So.2d 495

**Ronnie Earl JAMES**

v.

**STATE.**

**6 Div. 758.**

Court of Criminal Appeals of Alabama.

March 4, 1975.

Stephen K. Griffith, Cullman, for appellant.

William J. Baxley, Atty. Gen., and Randolph P. Reaves, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

The Grand Jury of Cullman County, Alabama, charged Ronnie Earl James with the felonious stealing of one hog of the value of $80.00, the property of Norman Graham. The Jury found appellant guilty as charged. Judgment set sentence at thirty months imprisonment in the penitentiary. Appellant was represented by court appointed counsel both at trial and here on appeal.

Appellant made a motion to suppress the admission of his shoes as evidence. The grounds cited in the motion were that the shoes were illegally seized and that the alleged spots of blood on them would be inflammatory to the jury. The shoes matched tracks found at the hog farm where the hog was stolen. The motion was denied.

The indictment arose from an incident at Norman Graham's hog parlor in Cullman County, Alabama, in the early morning hours of June 22, 1973. Officer Jimmy Johnson of the Cullman Police Department testified for the State. He stated that at about 3:45 A.M. on June 22, 1973, he and his partner, Sergeant Flinn, saw a car in the parking lot of Warehouse Grocery in Cullman. Appellant was "under the wheel" and two other men were in the car. The automobile had no license plate. As they approached, one Charles Gable left the car to make a telephone call at a phone station in the store. Gable appeared to be intoxicated, and Johnson arrested him for disorderly conduct. The officers then took Gable to the police station, but before leaving, told appellant not to drive the car as he also appeared to be intoxicated.

The further transcription of Johnson's testimony was destroyed by a tornado which struck Cullman, Alabama, and surrounding areas on April 3, 1974. The following relation of Johnson's testimony is from Johnson's summary of that testimony entered in the record without objection.

On their return to the parking lot after taking Gable to the station, the officers saw appellant driving his car. After chasing him, they arrested appellant for reckless driving, driving without a driver's license and driving a car without a license plate. They took him to the police station.

Johnson checked the car for more alcohol. He noticed that there was a red substance both on the trunk lid and rear bumper of the car. He opened the trunk and found a large amount of the red substance in the trunk as well as a white substance which appeared to be hair. He then called Sergeant Flinn who asked Jerry Yeager, the third person in the car, who was still asleep in the back seat, what the substance was. He replied that it must have been from frogs as the trio had been frog gigging that evening. Johnson and Flinn then turned the case over to a city detective coming on duty at that time.

G. O. Buckelew, an investigator for Cullman County testified, but a portion of the transcript of his testimony was also destroyed by the tornado. A summary of his testimony is in the transcript of the evi-

dence. In that summary, he stated he received a call regarding the theft at about 7:30 A.M. on June 22, 1973. He and three other officers went to Graham's farm. The hog parlor in question is located about 125 to 200 yards down a dirt road from the paved road known as the Missionary Grove Road. The parlor is enclosed by a fence, and there is a steel gate at the intersection of the paved road and the dirt road. The officers discovered two sets of foot prints in the soggy ground next to the dirt road leading to the hog parlor. The tracks lead from the gate to the parlor. One set of the tracks looked as if made by tennis shoes, while the other appeared to be made by square-toed shoes with a heel missing from the right shoe. Plaster of paris molds were made of both sets of tracks. They also found spots of dried blood along the road and a large pool of dried blood near the barn.

The officers then learned that appellant and Gable had been arrested earlier that morning and that the trunk lid of appellant's car had blood spots on it. On the way to the jail, they stopped at Gable's home. There the officers asked Mrs. Gable if Ronnie James and Charles Gable had been there. She said yes, and gave the officers permission to look in the shop behind the house. There they found what appeared to be pieces of meat tissue and hair. They then went to the jail.

At the jail, Officer Buckelew stated that he saw a 1968 Chevrolet with the trunk lid open. He noticed pieces of meat and white hair in the trunk which was covered with blood.

Inside the jail, he talked to appellant. Appellant told him that the 1968 Chevrolet was his. Buckelew noticed that appellant was wearing square-toed shoes with the right heel missing. Buckelew asked appellant's permission to take his shoes as he was investigating the theft and slaughter of a hog. He gave his permission and surrendered the shoes to the officer. Buckelew also spoke to Charles Gable and no-

ticed that he was wearing tennis shoes which sole matched the prints found at the hog parlor. He asked Gable for the shoes to be used in the investigation of the theft and slaughter of a hog. Gable agreed and gave him his shoes. All four shoes were sent to the Federal Bureau of Investigation laboratory in Washington, D. C., and the samples of blood, tissues and hair recovered from the hog parlor were given to the State Toxicologist. Both appellant and Gable were warned of their constitutional rights and stated only that they had been frog gigging that night and had nothing to do with a hog.

Norman Graham testified that he raised feeder pigs on his farm and that he had been informed by his caretaker that one of the hogs was missing. He reported this to the authorities. The value of the missing hog was $80.00.

He further stated that his land adjoins the Gable's land, that "old man" Gable has died since the occurrence and Charles Gable is the son of "old man" Gable. He said that he had given "old man" Gable permission to fish in his six ponds. Graham said it was possible for Gable's family to think that they all had permission to fish in the ponds. He added, however, that he had never given appellant permission to fish.

Detective Buckelew was recalled. Through him, the molds of the tennis shoe tracks and the molds of the square-toed shoes were admitted without objection. The tennis shoes and the square-toed shoes obtained from Gable and appellant were admitted without objection. The shoes matched the respective molds. A photograph of the inside and outside of the 1968 Chevrolet showing the dried blood was also admitted without objections. On cross-examination, he said that when he examined the tracks at the farm, he did not look to see if the blood was dripped before or after the tracks were made.

State Toxicologist, Brent Wheeler, testified that he analyzed the hair and blood

samples. The hair was similar to that of white hog bristle. The blood was not human, but was from an animal. It was not possible to determine the type of animal.

The State then rested. Appellant moved to exclude the State's evidence on the ground of insufficiency of the evidence and that the State did not prove venue. Over appellant's objection, the State recalled Mr. Graham who said his farm is located in Cullman County, Alabama. The motion was denied.

Appellant called Norman Graham. He reiterated the testimony with regard to his granting fishing rights to "old man" Gable. He stated further that the hog parlor is approximately five hundred yards from the Gable's house.

Officer Wendell Roden testified that he participated in the investigation of the theft. He was at the scene and observed the tracks. He said that he could not tell whether the blood spots were there before or after the tracks were made.

Charles Gable testified on appellant's behalf. He stated that he took appellant to one of two ponds located behind the hog parlor. He stated that they were drinking heavily and that the third member of the group, Jerry Yeager, was passed out in the car. He maintained that while appellant was fishing, he went to the hog parlor and killed a hog. He then carried it to appellant's car and put it in the trunk. Appellant had nothing to do with the hog. They got in the car, and Gable told appellant what he had done. Gable stated that appellant said he wanted nothing to do with it. Gable had appellant drive to his brother's home where he attempted to dress the hog. The witness said he messed up, so they drove to town. Gable threw the hog in the woods next to the road on the way to town. Gable stated that he pleaded guilty to theft of the hog and was currently on probation.

On rebuttal, G. O. Buckelew stated that when he talked to Gable at the jail, all Gable said was that he was so drunk that he could not remember what happened. Gable did not say that appellant did not have anything to do with the hog. Officer Joe Roberson also stated on rebuttal that he searched three fishing ponds on Graham's farm and found no signs that anyone had been fishing there.

I

From appellant's motion to suppress the admission of his shoes into evidence, it seems that the grounds are two-fold. First, appellant claims they were the product of an illegal search and seizure. Secondly, appellant claims the shoes were inflammatory to the jury in that there were spots of dried blood on them.

We consider the issue of the search and seizure first. Officer Buckelew's summary of this testimony reveals the following:

"We then went to the jail where I talked with Ronnie James and he said the whit (sic) over brown chevrolet 1968, no tag, belonged to him. He was wearing squared-toed shoed (sic) with the right heel missing, and the shoes had spots of what appeared to be dried blood on them. I ask (sic) his permission to take the shoes and have them examined in a (sic) investigation, that I was conducting concerning the theft and slaughter of a hog, he gave his permission and pulled his shoes off and handed them out through the bars to me, I did not enter the cell. I then went further back into the jail and talked with Charles Gable, he was wearing a set of mens (sic) tennis shoes, with the same kind of shoe bottom, as the prints found on the road at Norman Grahams Hog Farm. He was asked about his where abouts on the night of June 21st, 1973. He was also asked if he would give us his shoes to be used in an investigation of theft and slaughter of a hog. He also agreed and pulled his tennis shoes off and handed them out to me in the hall way of the jail."

In Hubbard v. State, 283 Ala. 183, 215 So.2d 261, (judgment vacated 408 U.S. 934, 92 S.Ct. 2851, 33 L.Ed.2d 747, in so far as it leaves the death penalty imposed) (modified and affirmed, 290 Ala. 118, 274 So.2d 298), the Supreme Court, through Coleman, J., provides us with an excellent analysis and review of cases dealing with the issue of admissibility of clothing obtained from defendants. The Supreme Court concluded:

"In the instant case, we are of opinion that defendant's clothing and the hairs from his body were real or physical evidence and were not evidence of a testimonial or communicative nature. Accordingly, we hold that admission of the clothing and hairs into evidence did not violate defendant's privilege under the constitution which guarantees that, in a criminal prosecution he shall not be compelled to give evidence against himself."

See also Green v. State, 42 Ala.App. 439, 167 So.2d 694, cert. denied 277 Ala. 698, 167 So.2d 701.

■ From the above quoted portion of Officer Buckelew's testimony, it is clear that neither appellant nor Gable were compelled to surrender their shoes. They were requested to do so and at the same time, they were advised the shoes were to be used in the investigation of the theft of the hog. We, therefore, hold that the denial of the motion to suppress the shoes as evidence was proper.

## II

■ Appellant further contends that the shoes should have been suppressed as evidence because they had spots of blood on them thus rendering the evidence inadmissable due to the inflammatory effect they would have on the jury. The trial judge inspected Appellant's shoes in the absence of the jury before ruling on their admissibility and had difficulty finding any spots on them.

The admissibility of demonstrative evidence is largely within the discretion of the trial judge. Longmire v. United States of America (5th Cir.) 404 F.2d 326, cert. denied 395 U.S. 912, 89 S.Ct. 1757, 23 L.Ed.2d 225. We also find the case of Gholston v. State, 221 Ala. 556, 130 So. 69, wherein a coat with bullet holes in it was exhibited to the jury. The coat belonged to a deputy sheriff who was wounded in a shooting where another officer was killed. Gholston was tried for the murder of the second officer. The court, in that case, stated with regard to the coat:

"While the admission of article having no relation to the crime and bearing no marks tending to establish any fact in connection therewith, but merely tending to arouse resentment in the minds of the jury, is erroneous, no such consideration must stand in the way of proving physical facts tending to establish any material circumstance in the case."

In the instant case, the shoes were admitted to establish the material circumstance of appellant's presence at the scene of the crime. We further find that the trial judge did not abuse his discretion in determining the shoes with blood spots on them were not inflammatory to the jury. Therefore, there was no error in denying appellant's motion to suppress.

## III

■ The issue of the sufficiency of the evidence is properly before this Court due to appellant's motion to exclude the State's evidence. The crime charged is that of grand larceny. Grand larceny is set out in Title 14, Section 331, Code of Alabama 1940. The elements of grand larceny are: (1) felonious taking and (2) carrying away of (3) personal property of (4) another (5) with intent to (a) convert it or (b) deprive the owner thereof. Livingston v. State, 44 Ala.App. 559, 216 So.2d 731. There was sufficient evidence presented at trial upon which the jury could rest its verdict.

We have carefully examined the record and transcript of the evidence as required by Title 15, Section 389, Code of Alabama 1940, and find no error therein.

Affirmed.

All the Judges concur.