313 So.2d 544 (1975)
Deown Perry WASHINGTON
v.
STATE.
5 Div. 278.
Court of Criminal Appeals of Alabama.
May 27, 1975.
Michael I. Kent, Opelika, for appellant.
William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.
HARRIS, Judge.
Appellant was convicted of burglary in the second degree and sentenced to ten (10) years in the penitentiary. At arraignment he pleaded not guilty. He was represented by employed counsel at trial. After conviction he was found to be indigent and a free transcript of the evidence was furnished him and new counsel was appointed to represent him on appeal.
The evidence presented by the state established that over the week-end of July 26-28, 1974, the Food Stamp Building in Opelika, Alabama, was broken into and $6,226.00 worth of food stamps and $144.00 in cash were stolen.
The serial numbers on the food stamps enabled the police to trace them to one F. C. Sumbree, Jr., in Russell County, who told the officers that appellant had given him the stamps to sell for him on a commission basis. If he sold the stamps for $250.00 Sumbree was to give him $30.00. Sumbree made an in-court identification of appellant as the man who gave him the stamps to sell. Sumbree questioned appellant as to his possession of the stamps and was informed they came from Columbus, Georgia. Sumbree sold some, but not all, of the stamps. Some woman tried to make purchases with the stamps she had bought from Sumbree at a store in Phenix City and she was arrested and carried to the jail in Phenix City. She was told these stamps had been stolen from the food stamp office in Opelika. She told the officers she was bought the stamps from Sumbree. The serial numbers on the stamps were identified as those stolen from the *545 Food Stamp Building in Opelika. The officers questioned Sumbree and he freely admitted that he was given the stamps by a man he knew by sight but did not know his name. He told the officers that if he ever saw the man again he would be able to recognize him and would notify the officers.
Sometime in August, 1974, Sumbree saw appellant riding in an automobile and immediately contacted the officers who arrested appellant. Detectives from the Opelika Police Department took custody of appellant and gave him the Miranda rights and warnings. Appellant signed a waiver of counsel form and told the officers that he understood his rights. The rights and waiver form are as follows:
"SX #12 10-23-74 WTB
Your Rights
"Place Phenix City Police dept.
Date 8/11/74
Time 2:45 P.M.
Education finished 7th Grade
"Before we ask you any questions, you must understand your rights.
"You have the right to remain silent.
"Anything you say can be used against you in court.
"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
"Waiver of rights
"I have had this statement of my read to me rights/and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.
"Signed Deown P. Washington
"Signed at 3:06 P.M.
"Witness Charles A. Beasley
Witness Nick Abbett
Time 2:50 P.M.
"Stated he understood his rights and we started talking and then later he signed the waiver of Rights
"CAB"
from the record:
"Q. Detective Abbett, still prior to any statement being made by the defendant, state whether you or anyone in your presence offered any reward, hope of reward, made any threat or promise against this defendant in order to obtain a statement from him?
"A. No, sir.
"Q. State whether or not at this time you asked the defendant questions concerning the shoes that he was wearing and whether or not the defendant responded to those questions.
"MR. BRASSELL: Your Honor, he's leading the witness now.
"THE COURT: He said, `State whether or not,' I believe, didn't he?
"MR. MYERS: Yes, sir.
"THE COURT: Overruled.
"A. Yes, sir, I did.

*546 "Q. What questions did you ask the defendant concerning his shoes and what was his responses?
"A. I asked him if the shoes he had on belonged to him and he stated that they did, and I asked him if during the past three weeks he had loaned the shoes he had on to anyone and he stated he had not, and I also asked him if at any time during the past three weeks, could someone have taken his shoes without his knowledge and he stated they could not.
"Q. State whether or not at this time you then asked the defendant if he knew anything about the theft of food stamps from the Lee County Food Stamp Program Building.
"A. Yes, sir, we did.
"Q. And what was his response?
"A. He stated that he didn't have any knowledge of any Food Stamp Building in Opelika."
Detective Abbett was asked if he got possession of appellant's shoes and he replied in the affirmative saying, "I just told him to take them off and he took them off."
The State Toxicologist made a mold of a shoe print found at the rear of the Food Stamp Building near the hole which had been cut through the wall of the building. Appellant's shoes were carried to the Toxicologist who made the plaster mold and he testified that the left shoe matched perfectly with the mold and in his opinion was the shoe that made the print found behind the building.
Appellant did not testify. He presented the testimony of a woman with whom he was living and she stated that he was with her on Friday and Saturday of the weekend of the burglary but she did not know where he was on Sunday as she was at work on her job with the telephone company. She gave the officers permission to search her home. She had $949.00 in her purse. She testified that $340.00 odd dollars were from her savings from the telephone company and that appellant gave her $600.00. The officers discovered several tools of the type which could have been used to cut the hole in the side of the Food Stamp Building.
Counsel for appellant made a motion to exclude the state's evidence on the grounds the state had failed to make out a prima facie case and there was no evidence to connect the defendant with the burglary. This motion was overruled and properly so. Young v. State, 283 Ala. 676, 220 So.2d 843.
The only question presented for our consideration is whether the trial court committed reversible error in admitting appellant's pair of shoes in evidence. We think the shoes were properly admitted. As this Court said in Green v. State, 42 Ala.App. 439, 167 So.2d 694:
"We are of the opinion that the trial court was without error in finding under this evidence that appellant was not compelled to take off his clothes and shoes and give them to the officers but that he did so voluntarily upon the officer's request. Where the defendant voluntarily relinquishes his clothing for examination, the results of such examination are admissible in evidence. Moss v. State, 146 Ala. 686, 40 So. 340; Webb v. State, 11 Ala.App. 123, 65 So. 845; Myhand v. State, 259 Ala. 415, 66 So.2d 544."
See also Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900; Hubbard v. State, 283 Ala. 183, 215 So.2d 261.
Where there is evidence from which the jury can by fair inference find the defendant guilty this Court has no right to disturb the verdict. Whether there is evidence of the defendant's guilt is a question of law and its weight and probative value is for the jury. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; *547 Bolton v. State, 21 Ala.App. 373, 108 So. 631.
Alibi evidence is always a jury question. Price v. State, 53 Ala.App. 465, 301 So.2d 230.
There was no motion for a new trial; there was no request for the affirmative charge, and no exceptions were reserved to the oral charge.
The judgment of conviction is affirmed.
Affirmed.
All the Judges concur.