177 So.2d 444

**Gerald EATON**

v.

**STATE.**

**2 Div. 464.**

Supreme Court of Alabama.

June 30, 1965.

John W. Drinkard, Linden, for appellant.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This appellant has been found guilty of murder in the first degree and sentenced to death.

The evidence tends to show that the appellant and three companions drove into Sumter County, Alabama, from Texas. They were in a Ford automobile, and had heard police radio broadcasts for their apprehension. Shortly after entering Alabama from Mississippi, they saw a highway patrol car apparently following them.

Speeding up and turning down a country road they eluded the patrol car, and eventually drove behind a country church where they spent the night. The next day, driving at random they stopped at a rural negro church. A well was near this church. They decided to "put someone in the well" that night.

After dark they drove to the home of Jack Stone. No one being there they burglarized the house, ransacking it thoroughly. The appellant testified they found some beer and whisky in the Stone home, and he had several cans of beer and about a half of a fifth of whisky.

After dark the quartet then drove to the home of Mr. and Mrs. Leonard Culpepper. The Culpeppers being absent, they entered the home and were in the process of burglarizing this home when the Culpeppers returned.

Mrs. Culpepper entered the house first. Upon observing the appellant and his companions with drawn guns she screamed. The appellant struck Mrs. Culpepper a severe blow on the head with a pistol, knocking her to the floor. As Mr. Culpepper entered the house he was covered by the guns in the hands of the four burglars.

After tying up the Culpeppers and ransacking their home the quartet placed Mrs.

Culpepper in the Ford automobile, and Mr. Culpepper was placed in his own automobile. With the appellant driving the Culpepper car, followed by the Ford, the quartet drove to the well in the churchyard. As they came to a stop at the well Mr. Culpepper was shot three times by either the appellant or by his companion Lokos.

The well cover was removed and the Culpeppers, still bound, were thrown head first into the well. The cover was replaced, and the quartet drove off.

Miraculously, Mrs. Culpepper survived this ordeal. The next morning her cries were heard by a passerby and help was summoned. Mrs. Culpepper was removed from the well, as was the body of Mr. Culpepper. Mrs. Culpepper has been largely confined to a hospital since, but was able to testify at the trial below.

Upon their arrest in Texas, after apparently committing other crimes in that state, the quartet confessed to the Culpepper crime. These confessions were repeated upon their return to Alabama.

Even the appellant's own testimony established his guilt of murder in the first degree.

We have not attempted to set out the evidence in all its gory details, in that we are clear to the conclusion that certain statements made by the solicitor in his argument to the jury, and to which objections were interposed and overruled, compel a reversal of this judgment. Such conclusions are necessitated if prior pronouncements of this court are adhered to and followed. These landmarks of our law cannot be ignored.

We copy the following excerpts from the record in reference to these improper arguments, numbering the statements as they appear:

(1) "SOLICITOR: Before I go into this, there is a matter that I think should be brought out and mentioned. It's a silent witness. The man who is responsible for gathering a lot of this evidence, a man you might

say that gave his life to it, Bill Bratton. Bill Bratton isn't here today.

"MR. DRINKARD: Now if the Court please, I'm going to object to Mr. Boggs inserting Bill Bratton in this case. It is for no purpose in the world but to prejudice this jury, and it has no place in it.

"COURT: Overrule the objection.

"MR. DRINKARD: I certainly except and I want the record to be sure to show it.

(2) "SOLICITOR: A man like this, if he was to get off with life imprisonment, he would be out and around or kill some convict there in the penitentiary.

"MR. DRINKARD: If the Court please, I object to that argument.

"COURT: Overrule the objection.

"MR. DRINKARD: Wait a minute, if the Court please. I want the record to show that. He's arguing that if he's sent off for life, that he'll be out in a little or no time. Isn't that your argument, Tom?

"SOLICITOR: Well, if he's not let out, he'll kill another convict in the penitentiary.

"MR. DRINKARD: Now I am objecting to that and asking the Court to exclude it.

"COURT: Overrule the objection.

"MR. DRINKARD: I except."

█ So far as disclosed by the record, Sheriff Bratton was present when the accused were returned to Alabama and questioned in Linden. The present sheriff of Sumter County testified that he was appointed as such sheriff following Sheriff Bratton's death. There is no testimony in the record as to the circumstances or cause of Sheriff Bratton's death. Certainly there is no evidence tending to show that it might be said that he gave his life to the investigation.

The above argument was completely de hors the record and therefore improper. Its prejudicial effect is obviously present.

We now consider that portion of the solicitor's argument as indicated in paragraph 2 above.

In Cobb v. State, 248 Ala. 548, 28 So.2d 713, the solicitor, in arguing for infliction of the death penalty, made statements as to the possibility of a pardon or parole in case of a verdict for life imprisonment. Upon objection being interposed, the solicitor withdrew the remark, and the trial court instructed the jury that they had no concern with what other officials might do, their duty being to render a true verdict on the facts of the case. In view of the court's action in the premise, the judgment was affirmed, but the court observed:

"As observed in Pilley v. State, 247 Ala. 523, 25 So.2d 57, our more recent decisions disapprove an argument of the character above outlined. But the opinion in the Pilley case also suffices to show that any evil effects, if any, in the instant case, were eradicated by the withdrawal of the remark and the instruction of the court to the jury as above outlined."

In Oliver v. State, 232 Ala. 5, 166 So. 615, the argument of the solicitor that there was a Governor with pardoning power, was designated as improper. This argument was, however, excluded by the court, thus saving the necessity of a reversal.

In Boyle v. State, 229 Ala. 212, 154 So. 575, the solicitor stated to the jury in his argument that the effect of finding the defendant not guilty by reason of insanity would be to "put him on the ground." The defendant's objection to this argument was overruled. In holding this ruling erroneous, the court wrote:

"Clearly the sole question in this connection was whether defendant was 'not guilty by reason of insanity.'

"What might happen if he were sent to the insane asylum, instead of the penitentiary, should not have been thrown into the case to influence the verdict. The action of the trial court was an invitation to the jury to consider such contingency."

To the same effect is Wise v. State, 251 Ala. 660, 664, 38 So.2d 553, where the solicitor had argued:

"If he is insane, don't convict him, but if they put him in Bryce's, perhaps he may be back here in a few months."

Objection to this remark was overruled. Concerning this incident this court wrote:

"But when objection is made and overruled, and the court does not properly instruct the jury in respect to the argument, our cases now hold that it is reversible error."

In the recent case of Dunn v. State, 277 Ala. 39, 166 So.2d 878, the solicitor argued:

"Now, I further think and think, and you as men of good common sense know, that if you sent this defendant as an insane man up to Tuscaloosa, the State mental institution, he wouldn't stay there more than ten days. That is my opinion."

Objection to this argument was overruled. The court held such ruling to be reversible error.

Again, in Taylor v. State, 42 Ala.App. 617, 174 So.2d 335, the court charged the jury in a prosecution for taking improper liberties with a child under sixteen years of age:

"You would not be justified in pardoning a person who is being tried for a crime, if you are satisfied beyond a reasonable doubt from the evidence that that person is guilty. That would be left for some other board, or body, or persons to do and not for the jury."

The Court of Appeals held this reference to some other "body, or board, or persons" to be reversible error.

The above excerpts show clearly that the argument of the solicitor in this case was highly improper. The trial court, by overruling the objections of defense counsel to the argument, indicated its approval of the statement as being correct. Burch v. State, 32 Ala.App. 529, 29 So.2d 422; McCray v. State, 261 Ala. 275, 74 So. 2d 491.

The only inference to be drawn from the solicitor's argument in the present case that, "A man like this, if he was to get off with life imprisonment, he would be out and around"—would be that the accused would either escape the penitentiary, or be paroled. Neither event was for the consideration of the jury.

The remaining portion of the statement, "or kill some convict there in the penitentiary," was improper as a statement of a fact not in the record, and further was not susceptible of proof. The probable inflammatory and prejudicial effect of such an argument cannot be denied.

While the defendant's own testimony shows him to be guilty of murder in the first degree, it might be argued that the evidence being uncontradicted, the doctrine of error without injury (Supreme Court Rule 45) might well be applied. Even so, we are here concerned not only with the degree of guilt but also with the imposition of the death penalty.

In Lawley v. State, 264 Ala. 283, 87 So. 2d 433, the defendant had been sentenced to life imprisonment on charges of rape and carnal knowledge. In response to an inquiry from a juror as to whether the defendant after a number of years, would be eligible for parole, the court stated that it was possible with a life sentence he might, with a good record, qualify for parole after fifteen years. Upon objection by defense counsel to this instruction, the court made further remarks and then stated he was withdrawing anything he said in refer-

ence to parole. This court held that the statement in reference to the withdrawal was insufficient to remove the prejudicial quality of the instructions, and wrote:

"As was said in Oliver v. State, 232 Ala. 5, 166 So. 615, 617:

'The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute. The authorities on this subject are collected in Roan v. State, 225 Ala. 428, 435, 143 So. 454; Leith v. State, 206 Ala. 439, 443, 444, 90 So. 687; Lakey v. State, 206 Ala. 180, 182, 89 So. 605.' "

For the error above noted, the judgment in this case must be reversed.

Reversed and remanded.

All the Justices concur.