We granted certiorari to consider several questions arising out of the second trial of this ancient case. The facts and prior proceedings are set out in the opinions of the Court of Criminal Appeals, of the United States Fifth Circuit Court of Appeals, 625 F.2d 1258 (5th Cir. 1980), and of this Court in the original companion case, Eaton v. State, 278 Ala. 224,177 So.2d 444 (1965). After careful consideration of the issues raised, we affirm the decision of the Court of Criminal Appeals, 434 So.2d 818, although we modify its analysis in certain respects. *Page 833 
 I
Lokos first argues that to uphold the trial judge's failure to recuse himself for bias or prejudice conflicts with earlier opinions of the Court of Criminal Appeals, this Court, and the United States Supreme Court. We agree with the Court of Criminal Appeals that in light of all the circumstances the letter written by the trial judge does not reveal actual, personal bias with respect to the issues for decision. In addition to the circumstances noted by Judge Barron, we would note that the assertions made in the letter concerned undisputed factual matters, i.e. that the crime was a gruesome one and that Lokos was a participant in it. At issue in the trial over which Judge Neilson presided was the nature of Lokos's participation and the validity of his defense of insanity. The trial judge's attitude toward Lokos as expressed in the letter is insufficient to show that he would not allow a fair trial with respect to the issues before him. Lokos citesMorgan County Commission v. Powell, 292 Ala. 300, 311,293 So.2d 830 (1974), and Ex Parte White, 53 Ala. App. 377,300 So.2d 420 (1974), as cases in which actual bias was shown and which require recusal here. However, the numerous and egregious improper acts of the trial judges in those cases are in no way comparable to what occurred here.
Although we agree that actual bias has not been established, we must also consider whether the trial judge's action created an appearance of impropriety that requires disqualification. The United States Supreme Court has held that "circumstances and relationships must be considered" in determining whether the need for appearance of justice "may sometimes bar trial by judges who have no actual bias," In re Murchison, 349 U.S. 133,136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). After viewing the case from this perspective, we do not believe that an appearance of impropriety exists in sufficient degree to justify reversal. Lokos has not pointed out any errors in the factual circumstances stated by Judge Barron, and these circumstances demonstrate that Judge Nielson's action was sufficiently unconnected from the decision he was to make so as to dispel impressions of bias that might otherwise develop. It would have been within his discretion to recuse himself to avoid an appearance of impropriety, but his decision to the contrary cannot be considered reversible error.
 II
Regarding Lokos's contention that the trial judge made an improper comment in the presence of the jury, we agree that the statement was error. However, in his final instructions to the jury the trial judge cautioned:
 "It is your duty, alone, to decide the facts, hear all of the evidence, and determine what, in fact, occurred, and apply those facts in accordance with the law as I instruct you on the law. Any rulings that I have made, or anything that I have said throughout the course of the trial, does not mean that I have an opinion one way or the other, because it's not my duty to have an opinion. It's your duty, and your duty to decide the case. Any statement that I have made indicated [sic] that I had an opinion one way or the other, I want to assure that is not my function in this case and it is not my duty. It is improper for me to comment on the evidence. . . ."
In our view this cautionary instruction was sufficient to satisfy the standard set out in Richardson v. State,403 So.2d 293, 295 (Ala.Cr.App. 1981), quotingGriffin v. State, 90 Ala. 596,8 So. 670, 673 (1890):
 "The weight to be given to evidence is wholly within the province of the jury, and any invasion of this province by the court in its orders is error; and any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them."
It would have been preferable for a specific, limiting instruction to have been given at the time the remark was made. *Page 834 
However, counsel only moved for a mistrial and did not ask for such an instruction at the time. In these circumstances the error cannot be a basis for reversal.
 III
With respect to the admission into evidence at the second trial of his inculpatory statements made at the time of his arrest in December 1963, Lokos now rests on the contention that the federal court's determination of his incompetence to standtrial in February 1964 precluded admission of the evidence in question. This is so, he contends, because at the second trial the trial court did not hear additional evidence from the state at the hearing on voluntariness, and because the state's expert witnesses at most testified that they did not know whether Lokos acted voluntarily in making these statements.
We recognize that in this case evidence indicating that Lokos was "incompetent to stand trial [is] obviously pertinent to the voluntariness of the confession" at the time of the arrest,Lokos v. Capps, 528 F.2d 576, 578 n. 4 (5th Cir. 1976). We are bound by the finding of the Fifth Circuit in 1980 that Lokos was incompetent to consult with his attorney and stand trial in 1964. Therefore, the question is whether at the second trial there was evidence for concluding that Lokos was competent to voluntarily confess after his arrest in December 1963 even though he has been found incompetent to be tried in February 1964. In other words, was there evidence that Lokos's mental state could have declined during that time? The record contains evidence from which the trial court could have reached the conclusion that Lokos's condition declined from a state in which he did in fact voluntarily confess. In particular, expert witnesses testified that one would expect Lokos's condition to deteriorate in prison and that paranoid schizophrenia can go into remission and then reappear. This supports an inference that Lokos's condition worsened from the time that he made the statements in question to the time of the first trial. Moreover, the testimony of Dr. Bacon was in this proceeding highly equivocal when tested on cross-examination. Yet, the Fifth Circuit had relied primarily on Dr. Bacon's earlier and more positive testimony in finding that Lokos was incompetent to stand trial in February 1964, Lokos v. Capps, supra, 625 F.2d at 1264-67. In the hearing on voluntariness at the second trial, Dr. Bacon testified that Lokos's condition was much improved in 1981 despite years in prison without treatment. He testified that the change could have occurred between 1955, when he last saw Lokos, and December 1963, when Lokos made the statements. Our review of Dr. Bacon's testimony at the hearing on voluntariness, which was not available to the federal court in its decision, thus makes it clear that the trial court had a reasonable basis for its conclusion. As noted by the Court of Criminal Appeals, this basis was further supported by the testimony of the state's expert witnesses on rebuttal. From both that testimony and Dr. Bacon's, it is clear that a condition such as Lokos's paranoid schizophrenia can go into remission. Other than the evidence of Lokos's incompetence to stand trial in February 1964, there was little evidence from which the trial court could have concluded that Lokos was in the grip of his disease at the time of making his inculpatory statements.
 IV
Lokos argues that the prior judicial determination of incompetence to stand trial in 1964 should automatically bar use of any testimony from the earlier trial at the retrial. In our view such a rule would be too broad. Use of testimony from the earlier trial should not constitute reversible error in the absence of a showing that the particular evidence used violated Lokos's constitutional rights. Three such rights are involved in any such case. Since the finding of incompetence to stand trial means that Lokos was unable to effectively consult with his attorney and rationally understand the proceedings, Lokosv. Capps, supra, 625 F.2d at 1258, 1269, use of testimony from the prior trial concerns his Sixth Amendment right to the assistance of counsel. If *Page 835 
the testimony used was his own, his Fifth Amendment right against self-incrimination is at stake. If the testimony was that of adverse witnesses, then his Sixth Amendment right to be confronted with the witnesses against him is also at stake, since an incompetent defendant is by definition potentially unable to effectively help his attorney prepare for cross-examination of those witnesses. In this case Lokos objects to the use of testimony of himself and of Dr. Grubbs and Dr. Kimbrough from his original trial. Lokos also objects to the use of his own testimony from the trial of his co-defendant, Gerald Eaton.
Lokos further contends that testimony from the earlier trial was tainted by the fact that he was represented by counsel who also represented Gerald Eaton and who was therefore subject to conflicting interests. We find it unnecessary to consider this matter. Whatever the effect of any conflict of interest, it is clear that because of the finding of incompetence to stand trial before, the state already bears the burden of showing that the use of prior testimony was harmless or did not otherwise violate Lokos's constitutional rights. No more of a burden would exist were we to find that the prior testimony was tainted from the nature of Lokos's representation by counsel. We express no opinion on the correctness of the discussion of the representation issue in the opinion of the Court of Criminal Appeals.
We agree with the Court of Criminal Appeals that to the extent that the trial testimony admitted was cumulative of the properly admitted inculpatory statements given at the time of Lokos's arrest, any error is harmless. However, Lokos denies that the testimony was merely cumulative. He argues presently that his trial testimony included statements such as "I shot him like a dog," that inflamed the jury against him. Indeed, examination of the record reveals that the testimony admitted in evidence in the present trial included each of the statements cited by the Fifth Circuit as evidence that Lokos "did not try to impress the jury favorably." 625 F.2d at 1263. In light of the medical evidence presented, the Fifth Circuit regarded "the unnatural testimony he gave to the jurors who were in the process of deciding his fate as being indicative of one who was not operating in the world of reality," id. at 1267.
Because we are considering this testimony not to determine Lokos's mental competence at the time it was given but its effect on the present jury, the conclusion of the federal court is not controlling here. The primary question to be decided by the present jury was Lokos's defense of insanity. This testimony could only be supportive of that defense for the very reason that it was supportive of a finding of incompetence. In view of the careful instructions given, we will not presume that the jurors were incapable of acting objectively. Considering the other evidence properly admitted and the relative favorable and unfavorable inferences that could be drawn from this evidence, the inflammatory aspect of this evidence would have been only marginal at most and certainly insufficient to establish any likelihood that the jury would have reached a different result without it. We recognize that Lokos's attorneys may have thought otherwise about this particular evidence, because they objected to the admission of all testimony from the original trial. However, we do not believe that our determination of what is harmless error is limited by the tactical judgments that the defense attorneys chose to make.
Regarding admission of the testimony of Dr. Grubbs and Dr. Kimbrough, we disagree with the conclusion of the Court of Criminal Appeals that the objections at trial were insufficient to raise the issue now argued on appeal. The record discloses that Lokos's attorney specifically objected on the grounds that admission of this evidence would deny Lokos his constitutional right to confront and cross-examine an adverse witness. Although this objection was not specifically couched in terms of Lokos's inability to consult with his attorneys in cross-examination of Dr. Grubbs and Dr. Kimbrough by reason of his incompetence, we believe that, read in context, the objection *Page 836 
made was sufficient to apprise the trial court of this contention.
Nevertheless, review of the testimony of Dr. Grubbs and Dr. Kimbrough reveals the error to be harmless. Dr. Grubbs was the state toxicologist who testified on the results of his autopsy of the murder victim. His testimony was technical in nature, and we fail to see how Lokos, if competent, could have usefully confronted this witness by consulting with his attorney for cross-examination, which in fact his attorney did not undertake.
Dr. Kimbrough examined and conversed with Lokos and his co-defendants when they were returned to Alabama after their arrests in Texas. On direct examination he gave a brief conclusory statement that Lokos was sane. Lokos's attorney then cross-examined Dr. Kimbrough at length, with considerable effect. He brought out that Dr. Kimbrough was not a psychiatrist, that he had spent only 30 minutes with Lokos, that he thought Lokos was a paranoid schizophrenic, that he lacked knowledge as to the course of treatment Lokos might have had, and that schizophrenia is a condition the symptoms of which come and go. This was an effective cross-examination, and we fail to see what effect there would have been on the jury's deliberations had Lokos been better able to consult with his attorneys. For these reasons we conclude that admission of the prior testimony was harmless error, especially in light of the additional evidence on which the jury could have based a conclusion of sanity. It is clear that a previous determination of incompetence does not require that the use of an earlier trial's testimony automatically be held reversible error. SeeMancusi v. Stubbs, 408 U.S. 204, 214, 92 S.Ct. 2308, 2314,33 L.Ed.2d 293 (1972); Ohio v. Roberts, 448 U.S. 56, 74 n. 12,100 S.Ct. 2531, 2543, n. 12, 65 L.Ed.2d 597 (1980).
 V
Finally, Lokos argues that refusal during the second trial to admit a deposition of Dr. Bacon that was used in the first trial to impeach Dr. Bacon's testimony was error. We agree with the Court of Criminal Appeals that this was not error, since Dr. Bacon was present. In brief Lokos contends that the deposition should have been admitted because other expert witnesses allegedly based their opinions in part on their knowledge of Dr. Bacon's statements in the deposition. While expert opinions should be based on facts in evidence, as the Court of Criminal Appeals correctly held, this objection was not made at trial.
For the above reasons, the judgment is affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, J., recuse themselves.