482 So.2d 1262 (1984)
Ex parte Mitchell RUTLEDGE.
(Re: Mitchell Rutledge v. State.)
83-17.
Supreme Court of Alabama.
September 7, 1984.
Rehearing Denied November 30, 1984.
*1263 Dennis N. Balske, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen., and Ed Carnes and Rivard Melson, Asst. Attys. Gen., for respondent.
Rehearing Denied November 30, 1984; separate opinions of Maddox and Jones, JJ., issued upon denial of rehearing.
EMBRY, Justice.
Petitioner Mitchell Rutledge was convicted and sentenced to death for robbery when the victim is intentionally killed. The facts are set out in the opinion of the Court of Criminal Appeals reported at 482 So.2d 1250 (Ala.Crim.App.1983). We issued the writ of certiorari pursuant to Rule 39(c), ARAP.
After carefully reviewing the record and briefs of the respective parties, we affirm as to each of the respective parts of the appellate court's opinion except for part IV, relating to the sentencing phase of the trial. Therefore, we affirm as to the conviction and reverse the sentence and remand for a new sentencing hearing.
The Court of Criminal Appeals summarizes defendant's basis for "his motion for mistrial, made during the sentencing phase closing argument of the State, [because] the prosecutor suggested that a sentence of life imprisonment without parole might not prevent appellant from, at some time, being released from prison."
In our review of this alleged error, it is essential that we place in perspective the entire chronology of events leading up to defendant's motion for mistrial. Again, quoting from the appellate court's opinion: "During the initial phase of the State's closing argument," (at the sentencing phase of the bifurcated trial), the prosecutor "indicated that appellant had committed the instant offense while he was on parole. Consequently, he argued that appellant had been given an opportunity to change his life and could not be rehabilitated."
The appellate court's opinion then sets out portions of defense counsel's closing argument, which may be summarized as follows: If one of "the reasons that you should kill Mitchell Rutledge" is "[f]or the protection of society," then "the death sentence in this case will not protect society any more than your other choice, life without parole; because Mitchell will spend the rest of his natural life behind bars. There is no chance that he is going to commit such an offense again, even if you all think that he would if he were given a chance. Society will be protected and you don't need to return a sentence of death to fulfill your civic duty that way. That will be taken care of by the legislature, and that's why they provided the next most serious punishment to death, life without parole, as an alternative."
In its closing summation to the jury, the State replied: "And then you heard Mr. Balske telling you what they wanted for this defendant, is life without parole. Mr. Balske told you because with that sentence there is no chance of him ever doing anything like this again and him spending the rest of his life in prison, because that is what `life without parole' means, and there is no chance that he will get out. That's what Mr. Balske told you. Ladies and gentlemen of the jury, that remark scares me to death. I'm not sure that there is anything such as life without parole."
Upon denying the defendant's mistrial motion, the trial court commented that because defense counsel had argued that, "under a life without parole sentence, Defendant *1264 would be locked up forever, [the State] has the right to argue that he may not be locked up forever." The State then continued its closing jury argument:
"Life without parole. Mr. Balske came up and told you that there is no chance that he [appellant] would ever get out again. I submit to you, ladies and gentlemen, that you can apply your own common sense to that statement. I submit to you that, as long as there are parole boards, as long as there are Federal courts in the State of Alabama, and as long as the legislature of the State of Alabama still exists, there is a chance that this defendant will get out, so do not be misled for a minute; and I don't think that you were when this man gets up and tells you that there is just no chance that he [appellant] will ever get out. You know better than that, and that's what scares me about life without parole or what it is supposed to be. Life without parole."
Finding the prosecuting attorney's argument proper as a "reply in kind to the previous comments of [defendant's] counsel," the Court of Criminal Appeals concluded that "Appellant cannot complain of the remarks when they were initiated, provoked, or occasioned by [the] action ... of his counsel."
We disagree. Certainly, as observed by the appellate court, argument of counsel that, in fact, is a reply in kind to an earlier argument of opposing counsel would not be subject to objection, even though such argument otherwise would be impermissible. But this settled proposition presupposes that the reply argument, otherwise impermissible, is rendered unobjectionable because of opposing counsel's earlier impermissible argument.
The "reply in kind" doctrine is based on fundamental fairness. Where counsel for one party permits counsel for the opposing party to make impermissible remarks to the jury without interposing an objection, the law implicitly reserves to the former the right to reply in kind, albeit equally impermissible, to the argument of the latter. As is ofttimes the case, an objection to an illegal argument, although sustainable, is ineffective to eradicate the harm done. Counsel, as a matter of trial strategy, may elect in such cases not to interpose an objection, wait his turn, and reply in kind, thus commenting upon matters that otherwise he could not argue.
It is a misapplication of this rule, however, to uphold an illegal argument under the guise of "reply in kind," where the initial argument, to which the purported reply is addressed, is itself a legally permissible comment to the jury.
The resolution of two related questions, then, is dispositive: (1) Whether defense counsel's comment to the effect that life without parole means that defendant would remain in prison for the rest of his life, was a proper and legal argument; and (2) Whether the State's comment to the effect that so long as parole boards, federal courts, and the State Legislature exist, there is a chance that this defendant will get out, was a proper and legal argument. We answer the first question "Yes," and the second question "No."
We hold that the argument of defense counsel here in question was properly premised upon the law of the case. Indeed, if the jury, during deliberations, had inquired of the court what the term "without parole" meant, the court could, and should, have replied to such inquiry, in substance, by telling the jury essentially what was said to them by defense counsel. We find nothing improper in counsel's statement to the effect that life without parole meant life without parole; this is the legislative mandate as the only sentence other than the death penalty once the jury has found the defendant guilty of capital murder. The use of his argument in an effort to persuade the jury to recommend life without parole as opposed to the death sentence is entirely within the range of permissible argument.
On the other hand, the State's argument exceeds the permissible boundaries in that it is directly contrary to the law of the *1265 case. The jury's duty is to make its recommendation in accordance with the law as instructed by the trial court. That law, as charged to it by the court, was that it could recommend, upon consideration of all the aggravating and mitigating circumstances, either death or life without parole. For the District Attorney to contradict the court's statement of the law, under which the jury is instructed to discharge its sworn duty, is tantamount to the usurpation of the trial court's function and constitutes prejudice to the substantial rights of the defendant.
In conclusion, we comment upon the recent United States Supreme Court case of California v. Ramos, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), upholding the constitutionality of a California statute requiring capital murder trial judges to instruct juries that they were permitted to consider the Governor's power to commute a life without parole sentence. In that case, the statute mandating such instruction became a part of the law of the case. Not only do we have no such statute, but it has long been the law of this State that comments upon the probability or possibility of what might happen under a particular sentence, falling outside the evidence and the law of the case, constitute improper argument. Eaton v. State, 278 Ala. 224, 177 So.2d 444 (1965); see also Murray v. State, 359 So.2d 1178 (Ala.Cr. App.1978). As Judge Cates aptly stated in the opening sentence of his article "Closing Arguments in a Criminal Case," 33 Ala. Lawyer 87 (Jan.1972), "The object of closing argument (sometimes called `summation') is to persuade the jury that a desired verdict upon the evidence is required by the law of the case which the judge will give to the jury."
For the failure of the trial court to grant appellant's motion for mistrial at the sentence hearing the Court of Criminal Appeals should have reversed the judgment of sentence and remanded for a new sentence hearing.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
MADDOX, J., dissents.
JONES, Justice (concurring specially).
I agree completely with the opinion of the Court. I write separately to point out that we have not overlooked Boggan v. State, 455 So.2d 228 (Ala.Crim.App.1984), in which the Court of Criminal Appeals held that a similar remark of the district attorney during closing arguments was not error. This Court denied certiorari. On its face, it would appear that the argument "approved" in Boggan has been disapproved in the instant case.
It is this apparent inconsistency that needs clarification. Our denial of certiorari in Boggan was not intended to signify approval of the district attorney's argument as "reply in kind." Certiorari was denied because Boggan's life without parole sentence, as opposed to the death sentence, rendered moot this ground of his petition. If we had granted certiorari, his only relief would have been a new sentencing hearing. Because he had already received the lesser of the only two options available (life without parole), we denied certiorari.
Here, Rutledge was sentenced to death. In this context, the district attorney's improper jury argument during the sentencing hearing is a viable, reviewable issue, and one which requires our reversal and remand for a new sentencing hearing.
MADDOX, Justice (dissenting).
On original deliverance, I did not write an opinion expressing the reasons for my dissent. The State has filed an application for rehearing, and I now take this opportunity to express (1) why I think the judgment of the Court of Criminal Appeals should be affirmed and (2) why this court's opinion, as written, will not provide the proper guidance to the Bench and Bar insofar as closing arguments are concerned.
I dissented because I thought, as did the Court of Criminal Appeals, that the prosecutor's comments were a reply in kind to *1266 improper remarks made by defense counsel during arguments at the sentencing phase of petitioner's trial. In order to gain a clear understanding of what actually was stated by defense counsel and the prosecuting attorney during the closing arguments, I am including portions of the trial record in this dissenting opinion so that the disputed comments can be analyzed in their proper context.
The prosecutor argued during the initial part of his closing argument that the fact that Rutledge committed this murder while he was out on parole established that he could not be rehabilitated. The State's remarks on the subject were as follows:
"You have heard talk about this defendant being in prison and on Work Release. What does that tell you? It tells you, first of all, that this defendant cannot be rehabilitated. He has had his opportunity. He has been in prison; he's been on Work Release. Yet, there he sits today, guilty of capital murder while on parole."
In response, the following is what defense counsel said:
"One last comment to what Mr. Myers said, and I think I'll talk about it a little bit more later on; but I want to talk about it now, while it is fresh on my mind, and probably while it is still fresh on your minds. The position of the District Attorney's office, their position is that Mitch can't be rehabilitated. I don't know whether that's true or not, but even if that's true; even if there is not a chance in the world, that's no reason for you to vote for him to die because our legislature has said that if somebody commits capital murder, or a capital offense, is that the only other sentence that you can give him is life without parole.

"That's life without parole; there's no parole, no way. That's it. Mitchell will spend the rest of his life down at Holman Station, Alabama, in a lockup by himself, isolated with those others that are sentenced to life without parole. That is where he is going to spend the rest of his life, so whether you think he is going to be rehabilitated or not, that doesn't really matter right now. That shouldn't help you decide, because he is going to be in that cell for the rest of his life. He will not be paroled." (Emphasis added).
Near the end of his closing argument, defense counsel began listing the reasons commonly advanced for the death penalty and argued that each reason did not justify the death penalty in this case. After first arguing that deterrence was no reason to impose the death penalty because, in his opinion, capital punishment did not deter, defense counsel continued as follows:
"What's the second reason for giving capital punishment in this case, or any case? For the protection of society. God knows, we need it. That's why you are here. But the death sentence in this case will not protect society anymore than your other choice, life without parole; because Mitchell will spend the rest of his natural life behind bars. There is no chance that he is going to commit such an offense again, even if you all think that he would if he were given a chance. Society will be protected and you don't need to return a sentence of death to fulfill your civic duty that way. That will be taken care of by the Legislature, and that's why they provided the next most serious punishment to death, life without parole, as an alternative." (Emphasis added.)
Thereafter, the prosecutor made the following remarks during his rebuttal:
"I don't think that any of you doubt for one minute that this man killed Gable Holloway because he wanted to, he intended to because he was going to make sure that he was dead. And then you heard Mr. Balske telling you what they wanted for this defendant, is life without parole. Mr. Balske told you because with that sentence there is no chance of him ever doing anything like this again and him spending the rest of his life in prison, because that is what `life without parole' means, and there is no *1267 chance that he will get out. That's what Mr. Balske told you.

"Ladies and gentlemen of the jury, that remark scares me to death. I'm not sure that there is anything such as life without parole
"MR. BALSKE: Objection, Your Honor, and may we approach the bench?
"MR. MYERS: I've got the right to respond in kind, Mr. Balske opened this up.

"(Whereupon, the following proceedings were had at the bench, inside the presence but outside the hearing of the jury.)
"MR. BALSKE: I'm going to make a Motion in limine, and a Motion for a Mistrial, if he goes on and starts talking about clemency or any of that crap.

"MR. MYERS: All I said was that I didn't know if there was such a sentence as life without parole.
"THE COURT: Well, I'm not going to let him argue what I might do or what the Governor might do or somebody else, with regard to clemency; but you did argue that he would be there forever
"MR. MYERS: Exactly.

"THE COURT: So, I think, in turn, that he could argue that he may not be there forever.

"I'm not saying under the lawyes, under the law he is sentenced to life without parole, but you argued that he would be locked up forever, and he has the right to argue that he may not be locked up forever.

"MR. BALSKE: Is that what you're going to do?

"MR. MYERS: Right. You opened up the door and I think I have a right to go through it.

"THE COURT: So, I am denying your Motion for a Mistrial.
"[RESUME FINAL CLOSING ARGUMENT BY MR. MYERS:]
"MR. MYERS: Life without parole. Mr. Balske came up and told you that there is no chance that he would ever get out again. I submit to you, ladies and gentlemen, that you can apply your own common sense to that statement. I submit to you that, as long as there are parole boards, as long as there are Federal Courts in the State of Alabama, and as long as the Legislature of the State of Alabama still exists, there is a chance that this defendant will get out, so do not be misled for a minute; and I don't think that you were when this man gets up and tells you that there is just no chance that he will ever get out. You know better than that, and that's what scares me about life without parole or what it is supposed to be. Life without parole." (Emphasis added.)
The majority found the prosecutor's remarks were an improper reply in kind since the defense counsel's remarks, to which the state was responding, were "properly premised upon the law of the case." I disagree.
It is true that under existing law defendants sentenced to life without parole cannot be paroled. If defense counsel had stuck to the simple statement that life without parole means life without parole, his argument would not have been open to the retaliatory remarks of the prosecutor; however, what defense counsel actually argued was that there was "no way" the defendant would ever be paroled, and he predicted that he would spend the rest of his life behind bars, because "[h]e will not be paroled." In judging whether this argument was open to reply, the crucial fact is that defense counsel did not say that under existing law or the law as it now stands appellant would never be paroled. Instead, he went outside the record and outside any knowledge now possessed by anyone and said: "He will not be paroled."
That statement predicts the future. It at least implicitly argues that Alabama law will never be changed by the legislature or by the state or federal judiciary to permit appellant to be paroled. Neither defense counsel nor anyone else knows if that is true.
Defense counsel's prediction of the future certainly is not a part of "the law of *1268 the case." The trial judge in this case did not instruct the jury that the law would never change and that if appellant was sentenced to life without parole it would be factually impossible for him to ever be paroled. Such instructions should never be given, because neither I nor any other mortal can foretell the future, especially when that future will be controlled by legislatures and courts.
It is true that under existing law inmates serving life without parole cannot be paroled. That is, in effect, what the trial judge instructed the jury. If defense counsel had stuck to that proposition, his argument would have been a legal and permissible argument; however, when defense counsel left the realm of what is now, and argued his own personal opinion about what would be in the future, he opened himself up to legitimate reply argument by the prosecutor. The prosecutor was entitled to argue in reply, as he did, that the future could not be foretold with certainty, as defense counsel assumed, and that any number of events could occur to undermine defense counsel's prediction. Everything the prosecutor said was true and related to defense counsel's improper prediction.
In my opinion, this Court should hold that defense counsel, in a capital case, has a choice. He can discuss aggravating and mitigating circumstances, and the law as it presently exists, and confine the prosecutor accordingly, or he can go into what he thinks the law will be in the future and let the prosecutor reply. Either way, it is fair. The only unfair approach is the one this Court has adoptedto let defense counsel go outside the record and speculate that there will be no changes in the law without allowing the prosecutor to reply in kind. That holding is grossly unfair and is contrary to current precedent.
The exact issue presented here was raised in Boggan v. State, 455 So.2d 228 (Ala.Crim.App.1984). In Boggan, the defendant was convicted of intentionally killing a victim during a robbery. The judge commuted defendant's sentence to life without parole. Defendant was granted a new trial under Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Boggan v. State, 403 So.2d 328 (Ala.Crim. App.1981). At the second trial, Boggan was sentenced to life imprisonment without parole. On appeal, the Court of Criminal Appeals opined:
"The appellant alleges reversible error was committed when the prosecution commented, during closing arguments, on the possibility of the sentence of life without parole being changed someday in the future.
"During the appellant's attorney's closing argument he stated:
"`The punishment, as you have been told, for capital murder is life without parole. And the courts have said that clearly means, that he will be imprisonedhe was 22; he's 26 nowthat he will be in prison when he is 60 years old for the acts of one night of his life.'
"On rebuttal, the State made the following comments:
"`Life without parole today is life without parole, but we never know whether the law could change in ten years or twenty years.

"`MR. ANDREWS: I object to that, Judge.
"`MR. GOMANY: He went into all that, Judge.
"`THE COURT: I'm going to overrule your objection.'
"This court has held on many occasions that in order to determine whether the above statement of the prosecutor was improper, `it must be examined in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer.' Washington v. State, 259 Ala. 104, 65 So.2d 704 (1953); Gibson v. State, 347 So.2d 576 (Ala.Crim.App.1977); Rutledge v. State, [482] So.2d [1250] (Ala.Crim. App.1983). The rule in Alabama is that `remarks or comments of the prosecuting attorney, including those which might or otherwise be improper, are not grounds for reversal when they are invited, provoked, *1269 or occasioned by accused's counsel and are in reply to or retaliating for his acts and statements.' Shewbart v. State, 33 Ala.App. 195, 32 So.2d 241, cert. denied, 249 Ala. 572, 32 So.2d 244 (1947); Camper v. State, 384 So.2d 637 (Ala.Crim.App.1980), cert. denied, 401 So.2d 167 (Ala.1981), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); Miller v. State, 431 So.2d 586 (Ala.Crim.App.1983); Rutledge v. State, supra.

"This record reflects that the prosecutor's argument was merely a reply in kind to the appellant's counsel's argument concerning punishment. Therefore, the prosecutor's argument was not improper."
Boggan at 237-38 (citations to trial record omitted). While it can be argued that the statements in the Court of Criminal Appeals' opinion are dicta because Boggan had been sentenced to life without parole (see Jones, J., concurring specially), nevertheless, that court's opinion in Boggan correctly states the law applicable to the situation being addressed in this case.
As stated in the Boggan case, it is well settled that in reviewing the propriety of the prosecutor's remarks they "must be viewed in [their] context and in the light of what had transpired," that is, in light of "the preceding argument of defense counsel to which [the prosecutor's] argument was an answer." Washington v. State, 259 Ala. 104 at 106, 65 So.2d 704 (1953). Again, defense counsel went beyond the law of the case by making such comments as:
"But the death sentence in this case will not protect society anymore than your other choice, life without parole.... There is no chance that he is going to commit such an offense again, even if you all think that he would if he were given a chance. Society will be protected and you don't need to return a sentence of death to fulfill your civic duty that way...."
All of the defense counsel's remarks must be viewed together, since all of his statements were made in one continuous argument during his closing remarks. These statements opened the door for the prosecutor, in rebuttal, to reply in kind to defense counsel's remarks, and, thus, the trial court's denial of defense counsel's motion for mistrial on this point was proper.
A trial court's ruling on a motion for a mistrial is reviewable on appeal. Stennett v. State, 340 So.2d 65 (Ala.1976). However, the motion is addressed to the sound discretion of the trial judge, and his ruling will not be reversed in the absence of a clear showing of abuse of discretion. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Heard v. State, 351 So.2d 686 (Ala. Cr.App.1977).
Based on the foregoing, I respectfully dissent.